UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BEST VALUE KOSHER FOODS, INC.,

– against –

AMERICAN AIRLINES, INC.,

Defendant.

**JUDGMENT, MEMORANDUM & ORDER**

16-CV-2263

APPEARANCES

**Best Value Kosher Foods, Inc.:**

**Amy Michelle Witkowski**
**Brian K. Condon**
Condon & Associates, PLLC
55 Old Turnpike Road
Suite 502
Nanuet, NY 10954

**American Airlines, Inc.:**

**Francis Allen Montbach**
**Olga Sekulic**
Mound, Cotton, Wollan & Greengrass
One New York Plaza
New York, NY 10004

JACK B. WEINSTEIN, Senior United States District Judge:

| | | |
|---|---|---|
| I. | Introduction | 1 |
| II. | Factual Background | 1 |
| III. | Procedural History | 3 |
| IV. | Law | 4 |
| | A. Standard for Summary Judgment | 4 |
| | B. The Montreal Convention | 5 |
| V. | Application of Law to Facts | 6 |
| VI. | Conclusion | 8 |

## I. Introduction

Best Value Kosher Foods, Inc. ("Best Value") sues American Airlines, Inc. ("American") for negligence in handling a shipment of cheese. It had contracted with American to ship the cheese from Paris to New York. When Best Value received the cheese in New York, it was allegedly rancid and worthless.

Plaintiff failed to promptly pick up the cheese, causing its deterioration. It was being held for inspection by an agency of the United States. In a ruling of first impression, this court holds that inspections by the Food and Drug Administration and/or United States Customs and Border Protection are "acts of public authority carried out in connection with the entry, exit, or transit of the cargo." *See generally* 21 U.S.C. § 381 and 19 C.F.R. § 12.1 (the Food and Drug Administration and United States Customs and Border Protection coordinate to inspect food imports). Under an applicable treaty, an air carrier cannot be held responsible for damage to cargo caused by the government's delay.

## II. Factual Background

In December of 2015, American and Best Value contracted to transport cheese from Paris, France to John F. Kennedy Airport in New York. American's 56.1 Statement, Nov. 9, 2016, ECF No. 15 ("Def. 56.1 Statement"), at ¶ 1. The contract is embodied in air waybill number 001-8116-2675 ("the Air Waybill"). Best Value's 56.1 Statement, Nov. 22, 2016, ECF No. 24 ("Pl. Resp. to Def. 56.1 Statement"), at ¶ 1. Underneath a section of the Air Waybill listing the weight of the shipment is written: "PLEASE TO STORE ANYTIME DURING TRANSPORT BETWEEN +2 AND +8 DEG. C". *See* Aff. of Moshe Banayan, Nov. 22, 2016,

ECF No. 22-1 ("the Air Waybill"). In a section titled "Nature and Quantity of Goods" is a warning: "CHEESES TO KEEP FRIDGE // URGENT." *Id.*

American lists its "International Conditions of Contract" on the reverse side of its air waybills. Pl. Resp. to Def. 56.1 Statement at ¶ 17. These conditions limit liability for the spoilage of perishable shipments. American does not guarantee refrigeration at its cargo terminals. *Id.* at ¶¶ 17-19. It requires shipments to be "prepared and packed to withstand a 72 hour transit, regardless of the service level requested or provided." *Id.* at ¶ 19.

On December 22, the cheese was delivered to American in Paris. *Id.* at ¶ 2. It arrived at John F. Kennedy Airport in New York on December 23. *Id.* at ¶ 3. On December 24, at 6:30 AM, American notified Unique Messenger Service ("Unique"), a courier service working for Best Value's freight forwarding agent, All-Ways Forwarding International Inc. ("All-Ways"), of the arrival of the shipment, and American immediately forwarded to Unique appropriate documentation. *Id.* at ¶ 5; *see also* Aff. of Daniel Maniscalco, Nov. 9, 2016, ECF No. 17, at ¶ 4; *cf.* Pl. Resp. to Def. 56.1 Statement at ¶ 6 (disagreement on whether Unique delivered documents to All-Ways on the same day it received them).

All-Ways, acting for Best Value, did not pick up the shipment until December 30, 2015, some six days after notification of its arrival. *Id.* at ¶ 8. At the summary judgment hearing, Moshe Banayan, the Chief Executive Officer of Best Value, testified that its agent was unable to pick up the shipment until then because the shipment was put "on hold" by the Food and Drug Administration and United States Customs and Border Protection while the agencies conducted inspections. *See* Hearing Tr. Notes from All-Ways confirm this testimony. *See* Aff. of Moshe Banayan, Nov. 22, 2016, ECF No. 22-2. Banayan testified that Best Value's agent picked up the shipment "within 6 hours" of its release by the United States authorities.

2

When Best Value received the cheese, its temperature was 70 degrees Fahrenheit (~21 degrees Celsius); ice packs accompanying the cheese had melted. *See* Aff. of Moshe Banayan, Nov. 22, 2016, ECF No. 22, at ¶ 12. The cheese was allegedly unmarketable. *Id.*

Best Value contends that it suffered $18,076.90 in damages. Pl. Resp. to Def. 56.1 Statement at ¶ 16.

American asserts that its cargo facilities at John F. Kennedy airport, including its refrigeration facilities, were open and functional every day from the date the shipment landed to the date it was picked up. Def. 56.1 Statement at ¶¶ 10-11, 13. It and Best Value dispute whether the "shipment at issue was refrigerated while in American's possession." *Id.* at ¶ 12. In American's internal records system, the following notes appear: "LOCATION OUTBO COOLER" and "PLZ PUT IN FRIDGE UPON RECEIPT." Aff. of Dorothy Coaker ("Coaker Aff."), Nov. 9, 2016, ECF No. 18-2, at 7.

### III. Procedural History

A Complaint in New York Supreme Court was filed on April 11, 2016. *See* Notice of Removal, May 5, 2016, ECF No. 1, at ¶ 1. American removed the case to federal court. *See* 28 U.S.C. § 1441. The lawsuit concerns rights and obligations under a contract to ship cargo by air from France to the United States.

Both France and the United States are parties to the Montreal Convention, a treaty that has a "complete preemptive effect over all claims" arising from the "'international carriage of persons, baggage, or cargo performed by aircraft for reward.'" *Olaya v. American Airlines, Inc.*, 2009 WL 3242116, at *1 (E.D.N.Y. Oct. 6, 2009) (quoting Montreal Convention Art. 1 ¶ 1).

American moves for summary judgment, arguing that it had no duty to refrigerate the shipment and that Best Value failed to prove the condition of the cheese when it was delivered to American in France.

Best Value opposes summary judgment, arguing: (1) the Air Waybill created an obligation for American to properly refrigerate the shipment; and (2) once American placed the shipment in a cooler, it assumed a duty to refrigerate it properly.

IV.     Law

### A. Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Inst. for Shipboard Educ. v. Cigna Worldwide Ins. Co.*, 22 F.3d 414, 418 (2d Cir. 1994). If a reasonable jury could return a verdict for the plaintiffs, summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The court must "resolve all ambiguities and draw all reasonable inferences in the light most favorable to the nonmoving party." *Summa v. Hofstra University*, 708 F.3d 115, 123 (2d Cir. 2013).

The burden of proving that no material issue of fact remains in dispute rests on the moving party, in this case, the defendant. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga*, 51 F.3d at 18. "Although the burden of demonstrating that no material fact exists lies with the moving party, unless the nonmoving party offers some hard evidence showing that its version of

the events is not wholly fanciful, summary judgment is granted to the moving party." *Miner v. Clinton County*, 541 F.3d 464, 471 (2d Cir. 2008) (internal quotation marks and alteration omitted).

### B. The Montreal Convention

The Montreal Convention is a treaty to which the United States and France are signatories. It has a "complete preemptive effect over all claims" arising from the "'international carriage of persons, baggage, or cargo performed by aircraft for reward.'" *Olaya v. American Airlines, Inc.*, 2009 WL 3242116, at *1 (E.D.N.Y. Oct. 6, 2009) (quoting Montreal Convention Art. 1 ¶ 1). "Where an action for damages falls within one of the Montreal Convention's... damage provisions, the Convention provides the sole cause of action under which a claimant may seek redress for his injuries." *Seagate Logistics, Inc. v. Angel Kiss, Inc.*, 699 F. Supp. 2d 499, 505 (E.D.N.Y. 2010) (internal quotation omitted). The "Convention's...damage provisions [include]: loss or destruction of...cargo sustained during carriage by air, subject to certain exclusions (Article 18)." *Id.* at 506.

Article 18 of the Convention provides that a "carrier is liable for damage sustained in the event of the destruction or loss of, or damage to, cargo upon condition only that the event which caused the damage so sustained took place during the carriage by air." Montreal Convention Art. 18 ¶ 1. "[C]arriage by air within the meaning of paragraph 1 of this Article comprises the period during which the cargo is in the charge of the carrier," and carriage by air includes any carriage "for the purpose of loading, delivery or transhipment." *Id.* at ¶¶ 3-4.

Airlines are strictly liable, subject to exclusions and limitations, for damage to cargo if that damage is sustained during carriage by air. *See Weiss v. El Al Israel Airlines, Ltd.*, 433 F. Supp. 2d 361, 365 (S.D.N.Y. 2006); *Knowlton v. Am. Airlines, Inc.*, 2007 WL 273794, at *2 (D.

5

Md. Jan. 31, 2007). "The Montreal Convention does not limit the scope of coverage...to the period during which the carrier is in possession of the cargo at an airport or on board an aircraft...Article 18 is intended to cover damage to cargo whenever and wherever the cargo is in the possession, custody or charge of the carrier." *AIG Prop. & Cas., Co. v. Fed. Express Corp.*, 2016 WL 305053, at *6 (S.D.N.Y. Jan. 25, 2016) (internal quotation marks omitted).

"If the carrier proves that the damage was caused or contributed to by the negligence or other wrongful act or omission of the person claiming compensation . . . the carrier shall be wholly or partially exonerated from its liability to the claimant to the extent that such negligence or wrongful act or omission caused or contributed to the damage." Montreal Convention Art. 20.

The carrier "is not liable if and to the extent it proves that the destruction, or loss of, or damage to, the cargo resulted from one or more of the following ... *an act of public authority carried out in connection with the entry, exit, or transit of the cargo.*" *Id.* at Art. 18 ¶ 2 (emphasis added).

## V. Application of Law to Facts

Best Value failed to present any admissible evidence of the condition of the cheese at the time it was delivered to American in Paris. *See UPS Supply Chain Sols., Inc. v. Am. Airlines, Inc.*, 646 F. Supp. 2d 1011, 1012 (N.D. Ill. 2009) (holding that a "prima facie case of liability is established upon a showing that the *goods were delivered to the carrier in good condition*, were delivered to the consignee at destination in damaged condition, and resulted in a specified amount of damage.") (emphasis added) (internal quotation omitted). To prove the cheese's condition on receipt by American, Best Value submitted what appeared on its face to be an official document from the French government attesting to the lack of dangerous bacteria in the cheese, and a letter from its consignor in France stating that the cheese was at 38 degrees

Fahrenheit and free of any bacterial defect on December 22, 2015, the date of delivery to American. *See* Aff. of Moshe Banayan, Nov. 22, 2016, ECF Nos. 22-6 and 22-7.

Defendant argues that these documents should not be considered because they were not produced by Plaintiff during discovery. Def. Reply Brief, Nov. 28 2016, ECF No. 26, at 5-6. It contends that the documents are ambiguous on whether the cheese was free from defect while it was still in France, noting that the bacteria-free samples the French government relied upon were taken on September 29, 2015, and that the letter from the French consignor is also ambiguous on the cheese's overall condition. *Id.* at 6-8.

Assuming that these documents are admissible, they do not prove the temperature of the cheese when it was delivered to American. The official paper from the French government references samples taken nearly three months before the shipment was delivered to American. ECF No. 22-6. That document describes the consignee as "DJOE AND CO LLC" and California as the destination of the cargo. *Id.* The document from Best Value's French consignor also describes the place of delivery as "DJOE & CO LLC" in California. ECF No. 22-7. These documents—the only evidence Plaintiff has mustered on the condition of the cheese in France—fail to raise a material issue of fact. They do not attest to the condition of the cheese at the time American received the shipment, and they relate to a shipment being delivered to "DJOE AND CO" in California, not to Best Value in New York. Without adequate evidence of the condition of the cheese when American received it in Paris, Best Value cannot prove that the shipment was damaged during "carriage by air," a prerequisite to holding a carrier liable. *See UPS Supply Chain Sols., Inc.*, 646 F. Supp. 2d at 1012.

The Montreal Convention exempts carriers from liability if "the destruction, or loss of, or damage to, the cargo *resulted from ... an act of public authority carried out in connection with*

*the entry, exit, or transit of the cargo.*" Convention Art. 18 ¶ 2 (emphasis added). Inspections by the Food and Drug Administration and/or United States Customs and Border Protection are "acts of public authority carried out in connection with the entry, exit, or transit of the cargo." *See generally* 21 U.S.C. § 381 and 19 C.F.R. § 12.1 (the Food and Drug Administration and United States Customs and Border Protection coordinate to inspect food imports).

American notified Best Value's agents in a timely fashion that the shipment had arrived. Banayan testified that inspections of the shipment by the United States agencies responsible for inspecting food imports prevented Best Value's agents from picking up the in a timely manner. *See* Hearing Tr. Damage to the cheese falls squarely within the "act of public authority" exception.

Even if American's decision to gratuitously place the cargo in a cooler gave rise to some duty to keep the cargo refrigerated at a certain temperature, American is only obligated to "use reasonable care" in discharging that duty. *See Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 468-69 (S.D.N.Y. 2008) (citing cases). It was unreasonable to expect American to refrigerate Best Value's shipment indefinitely until Best Value was able to pick it up. Six days is too long to have expected American to keep the cheese at a low temperature.

There is inadequate evidence of damages. Banayan testified at the evidentiary hearing that he paid $18,076.90 for the cheese. Best Value presented no documentary evidence supporting this sum. Nor are retail value and lost profits established.

## VI. Conclusion

Defendant's motion for summary judgment is granted.

Costs and disbursements are not granted. The loss appears to have been caused primarily by delays related to government inspection.

The previously scheduled trial date is cancelled.

SO ORDERED.

_____
Jack B. Weinstein
Senior United States District Judge

Date: December 7, 2016
    Brooklyn, New York